HAMITER, Justice.
 

 Mrs. Herbert Wenk, Jr., the undertutrix of the minors Allen Carr Benoit and Margaret Mae Benoit, instituted this suit to recover on behalf of those minors an undivided one-half interest in two lots, with improvements thereon, in the City of Shreveport, and also to obtain the erasure and cancellation from the records of Caddo Parish certain mortgages and judgments insofar as they affect and encumber such interest. Those impleaded as defendants were the Louisiana Real Estate and Development Company, Morris Anisman, Jake G. Levy, the Pioneer Industrial Bank, the Commercial National Bank in Shreveport, and Richard LeRoy Benoit, the latter being the duly appointed and qualified natural tutor of the mentioned minors.
 

 The district court, after a trial of the merits, rendered judgment in favor of plaintiff, and from it all of the defendants, except the minors’ tutor, appealed.
 

 As to the facts and circumstances giving rise to the litigation, the record discloses that on September 27, 1944; the defendant tutor, invoking the provisions of Act 209 of 1932, petitioned the First Judicial District Court of Caddo Parish for authority to sell to himself individually, at private sale and for a cash consideration of $7,500, his wards’ undivided one-half interest in the property in question, he then owning the other one-half interest. Also filed on the same date, as a part of the proceedings, were a report of duly appointed and sworn appraisers, in which they valued the minors’ interest at $6,000, and the written consent of the undertutrix to the proposed sale. On this showing, the court, in a formal judgment, ordered that a family meeting be dispensed with, authorized the making of the sale, and empowered the tutor to execute on behalf of the minors an “act of conveyance of said property to himself as purchaser by customary deed in accordance with this decree.” The tutor’s execution of the deed, evidencing the purported sale and reciting the payment of a cash consideration of $7,500, followed immediately the signing of that judgment.
 

 
 *646
 
 The next day (September 28, 1944) Benoit (the minors’ tutor) executed and caused to be recorded in the mortgage records of Caddo Parish, a special mortgage affecting the entire property, it being in favor of any future holder and in the principal amount of $3,000. The mortgage recited that it was given to secure the payment of one note for that amount, dated with the act, payable to the order of the mortgagor and endorsed by him in blank for the purpose of negotiation, due three years after date, and bearing interest at the rate of six per cent per annum from date until paid. Instead of giving only one note as recited in the act, however, the mortgagor executed four identical notes of the above description, and he negotiated them to the defendants Morris Anisman, Jake G. Levy, the Pioneer Industrial Bank, and the Louisiana Real Estate and Development Company, respectively. Each note so negotiated purports to have been paraphed by the notary before whom the act of mortgage was passed.
 

 Subsequently, there occurred an unauthorized cancellation of that $3,000 mortgage from the records of Caddo Parish, and on February 5, 1946, Benoit placed of record, against the entire property, another mortgage in the principal amount of $5,000. The note purportedly secured by this mortgage was negotiated to the Commercial National Bank in Shreveport, a defendant herein.
 

 On April 10, 1946, Morris Anisman, Jake G. Levy, the Pioneer Industrial Bank and the Louisiana Real Estate and Development Company obtained a judgment, through appropriate proceedings conducted against Benoit and on confirmation of default, annulling and setting aside the unauthorized cancellation of the $3,000 mortgage of September 28, 1944, and ordering rhat- such mortgage be amended and reformed so' as to secure all of the four notes (held by the respective mortgagees) for the total principal amount of $12,000. Also on that day there was a judgment rendered in another suit, on confirmation of default, in favor of the Commercial National Bank in Shreveport and against Benoit for $5,000, interest and attorney’s fees, with recognition-of a special lien and privilege on the property in question.
 

 Meanwhile, on April 6, 1946, the instant suit was brought, as before stated, by Mrs. Wenk, for and on behalf of' the minors whom she represented as undertutrix. During the trial there was introduced (1) documentary evidence in proof of the facts and circumstances recited above, (2) testimony of the chief deputy clerk of the First Judicial District ’ Court of Caddo Parish showing that Benoit had never recorded any extract of inventory or special mortgage securing the property rights of the minors, and (3) a stipulation of counsel reading as follows:
 

 “In this case it is agreed by and, between counsel for the plaintiff and defendants,
 
 *648
 
 respectively, that the defendant, Richard Le-Roy Benoit, carried no bank account in his name as Tutor for the minors, Margaret Mae Benoit and Allen Carr Benoit, in any of the banks situated in the City of Shreveport, from September 27, 1944, up to the date of the filing of this suit.
 

 “It is further agreed between the parties that Richard LeRoy Benoit, if produced and sworn in open court, would testify that he did not pay to the said minors the sum of $7,500, or any part thereof, recited as the consideration of that certain deed executed by him as Tutor to himself individually conveying or attempting to convey the property described in Article 3 of plaintiff’s petition.
 

 “It is further agreed by the parties that 'the defendants contend that the facts herein agreed are immaterial, irrelevant and incompetent and the right of the defendants to object to the use of this evidence on trial of this case is specifically reserved to them, it being understood that the facts agreed upon herein shall be used only in the event the Court shall be of the opinion that the same are admissible in evidence.”
 

 At the conclusion of the trial the district court decreed to be null, void and of no effect the deed dated September 27, 1944, which purported to convey the undivided one-half interest of the minors to their tutor. Also it ordered cancelled and erased from the mortgage records of Caddo Parish 'he above described mortgages and judgments insofar as they affected the interest of the minors.
 

 As correctly stated by counsel for appellants (all defendants except Benoit), the question presented by this litigation is purely one of law, namely: Did the tutor of the minors, who was a co-owner of the property involved, have the legal right to purchase in the manner above described the minors’ undivided one-half interest?
 

 It is the contention of the appellants that Act 209 of 1932, specifically Section 8 thereof, authorizes such a purchase, and that all of the statutory requirements were fully complied with by the purchaser. The statute, according to its title, purposes: “To regulate the private sale of property belonging wholly or in part to a minor or to an interdict.” Sections 1, 2, 3 and 4 thereof provide the procedure for such a sale of the property, either in its entirety or in indivisión, when it is to the advantage of the minor or interdict. Those provisions, ag stated in Section 5, are not applicable, however, “where, to effect a partition, it is desired to sell an entire property in which an undivided interest belongs to a minor or to an interdict.” The procedure for a sale of the last mentioned character is set forth in Sections 6 and 7. In Section 8 (the provision relied on here by defendants) it is said: “That any property sold under this Act may be purchased by any co-owner or co-owners thereof.” The remaining two sections of the statute read:
 

 
 *650
 
 “Section 9. That none of the provisions of this Act are in any way to change or affect Act No. 319 of 1926.
 

 “Section 10. That all laws or parts of laws contrary hereto or inconsistent or in conflict herewith, and particularly Section 2667 of the Revised Statutes of Louisiana, Act No. 25 of 1878, Act No. 50 of 1912, Act No. 245 of 1918, Act No. 248 of 1920, Act No. 221 of 1924, and Sections 1, 2, 3, 4 and 6 of Act No. 77 of 1928 be, and the same are, hereby repealed.”
 

 Appellee, on the other hand, maintains that the deed by which the purchase was attempted, as well as the proceedings taken in the tutorship matter to authorize it, is null and void because executed in contravention of a prohibitory law. In support of this position her counsel direct our attention to the following provisions of the Civil Code:
 

 “Article 12. Acts contravening prohibitory law invalid. — Whatever is done in contravention of a prohibitory law is void, although the nullity be not formally directed.”
 

 Article 337. Care of person and property of minor. — The tutor shall have the care of the person of the minor, and shall represent him in all civil acts.
 

 “He shall administer his estate as a prudent administrator would do, and shall be responsible for all damages resulting from a bad administration.
 

 "He can not
 
 either
 
 personally,
 
 or by means of a third person,
 
 purchase,
 
 lease or hire
 
 the property of the minor,
 
 or accept the assignment of any right or claim against his ward.
 

 “Article 1790. Incapacities specially provided by
 
 law.
 
 — Besides
 
 the general incapacity which persons of certain descriptions are under, there are others applicable only to certain contracts, either in relation to the parties, such as a
 
 husband and wife,
 
 tutor and ward, whose contracts zvith each other are forbidden;
 
 or in relation to the subject of the contract, such as purchases, by the administrator, of any part of the estate which is committed to his charge, and the incapacity of the wife, even with the assent of the husband, to alienate her dotal property, or to become security for his debts. These take place only in the cases specially provided by law, under different titles of this Code.” (Italics ours.)
 

 These articles, prohibiting the tutor’s purchasing of his ward’s property, are not expressly repealed by the 1932 statute; no mention of them is made therein. Defense counsel insist, however, that they have been superseded, or impliedly repealed, in view of the broad provisions of the statute’s Section 8 (authorizing any co-owner to purchase the minor’s property) and of the recitation of Section 10 that “all laws or parts of laws contrary hereto or inconsistent or in conflict herewith * * * be, and the same are, hereby repealed.”
 

 
 *652
 
 Repeals by implication, according to our jurisprudence, are not favored; and the courts will reconcile seemingly conflicting statutes if such can be done by a fair and reasonable interpretation thereof. Bennett-Brewer Hardware Company v. Wakeman, 160 La. 407, 107 So. 286. Another well established rule to be considered here, in as much as the 1932 Act is a general law (regulating private sale of the property of a minor or interdict) and the codal provisions in question are special in nature (governing capacity of persons to contract), is that a special law is not repealed or amended by a general law unless the two can not possibly stand together, or unless the intention to repeal or amend is otherwise manifest. Keel et al. v. Sutherlin et al., 130 La. 182, 57 So. 794.
 

 Unquestionably, by a fair and reasonable interpretation it is possible to reconcile the statutory and codal provisions under consideration, thereby giving effect to all. Taken together, a construction thereof could be given that the property of a minor may be purchased at private sale by any co-owner other than the tutor of such minor.
 

 But does the 1932 statute manifest an intention of the Legislature to repeal the codal articles ? The answering of this question correctly requires not only a consideration of the statute’s terms and provisions but also a review of prior legislation dealing with the same subject matter.
 

 Originally, the articles of the Civil Code, under Title VIII (Of Minors), Chapter 1 (Of Tutorship), dealt exclusively with the sale of a minor’s property, except as to the procedure to be followed in certain cases. Thus, Article 339 declared that the immovables of a minor can not be sold or mortgaged, unless on the recommendation of the tutor and of a family meeting and then only when absolutely necessary or when of evident advantage to the minor. Articles 340, 341 and 342 provided for the fixing of the terms and conditions of the sale by the family meeting, for the judge’s authorizing the sale, and they set forth the manner and method for selling the property, a sale at public auction and with appraisement being required.
 

 An exception to the rule of Article 337 (prohibiting a tutor from purchasing the property of his ward) was apparently made by Article 343, it reading in the Code of 1870 as follows: “Whenever the father or mother of a minor has property in common with him, they each can cause it to be adjudicated to them, either in whole or part, at the price of an estimation made by experts appointed and sworn by the judge, after a family meeting, duly assembled, shall have declared, that the adjudication is for the interest of the minor, and the undertutor shall have given his consent thereto; and in this case the property so adjudicated, shall remain specially mortgaged for the security of the payment of
 
 *654
 
 the price of the adjudication and the interest thereof.”
 

 By Act 50 of 1900, Article 343 was amended slightly; and again by Act 78 of 1914 it was amended and re-enacted, thereby furnishing the present provisions which are: “Whenever the parent of a minor has property in common with him, the parent can cause the share of the minor either in the whole of the property or in any part thereof to be adjudicated to the parent at the price of an estimation made under oath by experts appointed by the Judge, provided that a family meeting duly assembled shall declare that the adjudication is for the interest of the minor and the undertutor shall give his consent thereto. When the property is an immovable, the share of the minor which shall have been adjudicated shall remain specially mortgaged in the minor’s favor to secure the payment of the price of adjudication in principal arid interest.”
 

 Article 344, which is dependent on Article 343, reads: “In case of an adjudication made under the preceding article or any other law authorizing similar adjudications, a special mortgage may be given by the father or mother on immovable property, to secure the rights of the minors; and such special mortgage shall have the effect of annulling the mortgage' arising from such adjudication.”
 

 Next is Article 345, reciting: “The prohibition of alienating the immovables of a minor, does not extend to the case ii\ which a judgment is to be executed against him, or of a licitation made at the instance of the coheir, or other coproprietor.”
 

 From the discussed articles, it is noticed that the Code of 1870 clearly announced, as a matter of substantive law, under what circumstances and to whom property of a minor could be sold. Also, it set forth the procedure by which the sale could be consummated, except in the two cases covered by Article 345. As to the second of these, i. e., a licitation made at the instance of the coheir or other coproprietor, the procedure to be followed was furnished by Section 2667 of the Revised Statutes of 1870, it reciting: “When heirs of a succession hold property in common, and it is the wish of any one of them, or of a minor represented by. his tutor or tutrix, to effect a partition on the advice of a family meeting, duly convened according to law, to represent the minor or minors, said property may be sold at private sale for its appraised value; said appraisement to be made and the terms of said sale to be fixed by the family meeting, and said proceedings to be homolgated by the judge of probate of the parish in which the said minor resides.”
 

 In 1878, by Act 25, the Legislature amended Section 2667 of the Revised Statutes (which applied only when the heirs of a succession held property in common) so as to make applicable the procedure authorized therein “when two or more persons, some or all of whom are minors, hold property in common.”
 

 
 *656
 
 When Section 2667 of the Revised Statutes, as amended by Act 25 of 1878, was interpreted in 1909 in Moore v. Gulf Refining Company et al., 124 La. 607, 50 So. 596, this court held that to effect a partition of property in which a minor is interested, the law required the sale to be made of the whole property, not merely of the min- or’s interest.
 

 Obviously, it was because of the result reached in the Moore case that the Legislature in 1912 amended such law, through the adoption of Act 50, so as to provide that, to effect a partition of property in which minors are interested, the whole of the property may be sold, “ * * * or the co-owner or co-owners may purchase the entire interest of said minor or minors at private sale for its appraised value * * *_»
 

 Thereafter, from time to time, Section 2667 of the Revised Statutes (as amended), dealing with a private sale for the purpose of effecting a partition, was further amended (Acts 245 of 1918, 248 of 1920, 221 of 1924), the amendments variously serving to authorize the sale of an interdict’s property, the appointment of representatives for absent minors and interdicts, and to eliminate confusion in prior legislation. All of these amending acts recited, substantially as did the 1912 statute, that “ * * * any co-owner or co-owners may purchase the entire interest of the said minor or minors, interdict or interdicts, at private sale for its appraised value * *
 

 With reference to the manner in which a minor’s property could be sold for purposes other than to effect a partition, no deviation from the codal articles occurred until 1924. In that year the Legislature, by Act 149, authorized the private sale of the property of a minor or interdict, when it was to his advantage and when made under the supervision of the court, regardless of the purpose of the sale. Two years later, by Act 77 of 1928, the language of that statute was clarified, the Legislature specifically providing for a private sale of the interest of the minor or the interdict whether it be the entire property or only a part thereof, and declaring “that nothing in this act shall be construed as repealing Act No. 248 of the General Assembly of 1920.” The latter, of course, concerned a sale to effect a partition.
 

 When the Legislature met in 1932 there existed two distinct lines of statutes on the subject of the private sale of property belonging to a minor or an interdict, the first of which dealt with a sale made to effect a partition and the second with a sale for other purposes. Evidently desiring to consolidate these two lines in one comprehensive statute, the Legislature proceeded to and did adopt Act 209.
 

 That the providing of such a consolidation was the reason for the statute’s enactment, and that the Legislature had no intention by its action of changing any codal provision bearing on the relationship between a tutor and his ward, is clear to us.
 
 *658
 
 The first five sections of the statute, as pointed out above, relate to the sale of property of a minor or interdict, either in its entirety or in indivisión, when made for a purpose other than to effect a partition, and the procedure described therein is identical with that outlined in Act 77 of 1928, the successor to Act 149 of 1924; Sections 6 and 7 give the steps to be followed (those developed under Section 2667 of the Revised Statutes and the various amendments thereto) in conducting a sale of property to effect a partition; and Section 10 repeals specifically all of the legislation thus superseded by the re-enacted provisions. None of those sections nor any laws which they supersede, it is well to notice, mention codal provisions that render the tutor incapable of purchasing his ward’s interest.
 

 It’ is of no importance here that Section 9 of the 1932 Act retained the provisions of Act 319 of 1926; that statute relates merely to the dispensing with a family meeting under certain conditions. Furthermore, when consideration is given to the fact that the adoption of the 1926 Act eliminated much confusion that arose from previous legislation on the question of the family meeting (Acts 110 of 1920 and 248 of 1920), the reason for its retention is obvious.
 

 Regarding Section 8 of the Act of 1932, it is true that the Legislature used rather broad language when it declared,' “That any property sold under this Act may be purchased by any co-owner or co-owners thereof.” But this provision is substantially identical with that contained in Act SO of 1912 (as well as in the later amending statutes), made necessary by the court decision in Moore v. Gulf Refining Company et al., supra; and its inclusion in the 1932 statute undoubtedly was for the sole purpose of making certain the avoidance of the difficulty experienced in that litigation.
 

 To give to the mentioned Section 8 the interpretation contended for by appellants, which is that it authorizes a tutor to purchase his ward’s interest in the manner attempted herein, is to read out of the Civil Code Article 343, providing for the selling of property of a minor to his parent only on the furnishing of proper security. The very purpose of that codal provision was to afford protection to the minor against parents who seek to take advantage of him. If a parent of that character were permitted to purchase his child’s property (under the 1932 Act) without giving adequate security, certainly he would not resort to the procedure established by Civil Code Article 343. Incidentally and significantly, Civil Code Article 343 was re-enacted in 1914, two years after the adoption of Act 50 of 1912 which contains a counterpart of Section 8 of the 1932 statute.
 

 We agree thoroughly with the observation of the district judge, offered in his well considered written reasons for judgment, that: “During this development of the law and jurisprudence it is to be noted that never before so far as we have discovered or been cited, has a case arisen
 
 *660
 
 where the tutor has attempted to buy the interest of his minor, whether to effect a partition or to simply purchase his interest in property. Article 337 of the Revised Civil Code, containing this prohibition, has been in existence during all of the development of the law of private sale of the interest of a minor and no legislative enactment or decision has indicated that it has been modified or repealed. Its purpose in preventing those standing in a fiduciary-capacity from representing themselves and their principal still exists. This principal and rule against serving two masters runs through all law and equity. The private sale of the minor’s property by the Tutor to himself is void as being in contravention of a prohibitory law.”
 

 Our conclusion, therefore, is that in the adoption of Act 209 of 1932 there was no intention manifested by the Legislature to repeal any provisions of the Civil Code relating to a tutor’s purchasing of his ward’s property.
 

 The judgment is affirmed.