Linda Faye WEEKS, Wife of Gary Albert Raimer and Gary Albert Raimer, on behalf of themselves and others similarly situated, Plaintiffs,

v.

Hon. Harry CONNICK, District Attorney of the Parish of Orleans; Hon. William J. Guste, Jr., Attorney General of the State of Louisiana and Dr. William H. Stewart, Director of Health and Human Resources Administration, Defendants.

Calvin JACKSON, M.D. and Delta Women's Clinic, Plaintiffs,

v.

William J. GUSTE, Jr., Attorney General of Louisiana; Charles B. Odom, M.D., Louisiana State Board of Medical Examiners; Harry J. Connick, District Attorney; William J. Steward, M.D., Health and Human Resources Administration, individually and in their official capacities, Defendants.

MOTHER DOE, Individually and on behalf of her minor daughter, Jane Doe, and on behalf of all others similarly situated, Plaintiffs,

v.

William H. STEWART, M.D., individually and in his official capacity as Commissioner of the State of Louisiana Health and Human Resources Administration; and Garland L. Bonin, individually and in his official capacity as Director of Family Services of the State of Louisiana Health and Human Resources Administration, Defendants.

Nos. 73–469, 74–2425 and 74–3197.

United States District Court,
E.D. Louisiana.

Jan. 23, 1990.

William E. Rittenberg, ACLU of Louisiana, New Orleans, La. (Lawrence Blake Jones, Scheuermann & Jones, New Orleans, La., of counsel), Rachael N. Pine, Trial Atty., Janet Benshoof, Lynn M. Paltrow and Kathryn Kolbert, American Civil Liberties Union (Jean M. McCarroll and Deborah Goldberg, Berle, Kass & Case, New York City, of counsel), for plaintiffs.

Jack Peebles, Chief Crim. Div., Office of the District Atty., New Orleans, La., John S. Baker, Jr., Trial Atty., Baton Rouge, La., Jenifer Schaye and Meredith H. Lieux, Asst. Attys. Gen., for defendants.

William J. Guste, Jr., Baton Rouge, La., pro se.

Before W. EUGENE DAVIS, Circuit Judge, and SEAR and FELDMAN, District Judges.

W. EUGENE DAVIS, Circuit Judge, Sitting by Designation:

The District Attorney of Orleans Parish and the Louisiana Attorney General (collectively, the state) moved under Fed.R.Civ.P. 60(b)(5) to dissolve the 1976 injunction against enforcement of Louisiana's criminal abortion statutes. For the reasons set out below we deny the motion.

## I. Background

The four actions in which this court entered its 1976 injunction were filed after the United States Supreme Court decided *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Plaintiffs in these cases challenged the constitutionality of three Louisiana criminal abortion laws: La. Rev.Stat.Ann. §§ 14:87, :87.4, and :88. Section 14:87 is a blanket prohibition against the performance of all abortions. Section 14:87.4 prohibits the advertisement of abortion services. Section 14:88 prohibits the distribution and advertisement of abortifacients. The cases were consolidated and a three-judge district court held that the statutes at issue were unconstitutional and enjoined their enforcement. *See Weeks v. Connick* and consolidated cases (E.D.La. Jan. 26, 1976).

The state seeks an order dissolving the 1976 injunction under Fed.R.Civ.P. 60(b)(5) on grounds that the Supreme Court's decision in *Webster v. Reproductive Health Services,* —— U.S. ——, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), significantly changed the decisional law upon which this court based its injunction. However, we need not reach this issue with regard to two of the three statutes because the issue has been rendered moot by the Louisiana legislature's implied repeal of § 14:87 and certain portions of § 14.88.[1] With regard to

§ 14:87.4, prohibiting the advertisement of abortion services, we conclude that the decisional law has not changed so that it is inequitable to maintain the injunction.

## II. Repeal of the Abortion Statutes

■ Plaintiffs[2] respond to the motion, first, by asserting that the Louisiana legislature explicitly and impliedly repealed §§ 14:87 and 14:88. If a statute is repealed then suits regarding its constitutionality are moot. *Diffenderfer v. Central Baptist Church,* 404 U.S. 412, 414–15, 92 S.Ct. 574, 575–76, 30 L.Ed.2d 567 (1972).

The explicit repeal argument is without merit because the legislature never referred to the particular criminal abortion statutes in its later legislation regulating abortions. A repeal "is express when it is literally declared by the subsequent law." La.Civ.Code Ann. art 8 (West Supp.1989). The usual way the legislature expressly repeals a statute is for it to specifically identify in the new legislation the statute it is repealing. *See, e.g.,* 1980 La. Acts 418, Section 2.

But plaintiffs' argument that the criminal abortion statutes were impliedly repealed by the later legislation is more substantial. Louisiana courts recognize a presumption against repeal by implication. *See, e.g., State v. Jones,* 220 La. 381, 56 So.2d 724, 726 (1952); *Macon v. Costa,* 437 So.2d 806, 809–10 & n. 3 (La.1983). The effect of this presumption is to require a court to make every effort to reconcile apparently conflicting statutes. *Id.; Wenk v. Anisman,* 211 La. 641, 30 So.2d 567 (1947). Louisiana courts, however, recognize repeal by implication when they find an irreconcilable conflict between two statutes.

In *Macon v. Costa,* 437 So.2d 806, 812 (La.1983), the court stated that where there was "an irreconcilable conflict" between

---

1. The implied repeal argument is only applicable to the portion of § 14:88(1) which pertains to the distribution of abortifacients. The portion of § 14:88(1) addressing the advertising of abortifacients is discussed in section III below. The state concedes that there is no case or

controversy as to § 14:88(2) prohibiting the advertisement of contraceptives.

2. The designation of the parties from the original suits is retained here; thus, "plaintiffs" are the respondents to the state's motion.

two statutes one must prevail. In that case an earlier statute which set the term of office of board members was held "impliedly repealed" by a later statute which set a different term of office. *Id.* at 813.

In *Wenk v. Anisman*, 211 La. 641, 30 So.2d 567 (1947), the court applied the presumption against implied repeal in reconciling two statutes. The later-enacted statute was a general statute which provided procedures for the sale of a minor's property to a co-owner while an earlier, more specific, statute prohibited a tutor from purchasing the property of a minor he represented. The defendant in the case was both the minor's tutor and a co-owner of property with the minor. The court concluded that in enacting the subsequent statute the legislature did not intend to include tutors within the general statute and, therefore, the statutes did not conflict and the legislature did not impliedly repeal the earlier statute. *Id.* 30 So.2d at 571.

Furthermore, Louisiana has specifically provided for implied repeals. A Louisiana statute of general application provides: "Unless specifically provided therein, all laws or parts of laws in conflict with a provision of law subsequently enacted by the legislature are repealed by the law subsequently enacted." La.Rev.Stat.Ann. § 24:176(A).

After we enjoined the enforcement of Louisiana's criminal abortion statutes the legislature enacted a series of statutes containing detailed regulations governing abortions. *See* 1978 La. Acts 435; 1980 La. Acts 418; and 1981 La. Acts 774. Each act contained provisions stating that, "All laws or parts of laws in conflict herewith are hereby repealed." *Id.*

A review of the later regulatory statutes is necessary to determine whether they conflict with the earlier criminal abortion statutes at issue here. The 1978 act required abortions to be performed by a physician, required informed consent for an abortion and established reporting requirements for abortions. Both the 1980 and 1981 acts: 1) restricted post-viability abortions; 2) required parental or court consent before a minor could receive an abortion;

and 3) required physicians to keep records of and report abortions. The 1981 act required physicians to obtain informed consent. Each of the above acts also contained many other provisions regulating abortion which were later declared unconstitutional. *See Margaret S. v. Edwards*, 488 F.Supp. 181 (E.D.La.1980), *aff'd*, 794 F.2d 994 (5th Cir.1986) (1978 act); *Margaret S. v. Treen*, 597 F.Supp. 636 (E.D.La. 1984), *aff'd*, 794 F.2d 994 (5th Cir.1986) (1980 and 1981 acts).

Plaintiffs contend that the later acts regulating abortion are clearly inconsistent with a criminal prohibition of abortion. The state argues that regulation of an activity is not inconsistent with the prohibition of it. However, it is clearly inconsistent to provide in one statute that abortions are permissible if set guidelines are followed and in another to provide that abortions are criminally prohibited. For example, the 1978 act provided, in part:

§ 1299.35.15. Instructions to be provided subsequent to abortion

Any physician who *shall perform or induce an abortion*, shall subsequent to the abortion being performed or induced, provide his patient with specific oral and written medical instructions to be followed by that patient in order to insure her save recovery *from the abortion.*

1978 La. Acts 435 (emphasis added). The 1981 act provided, in part:

§ 1299.35.2. Abortion by Physician

A. No person shall perform or induce an abortion unless that person is a physician.

1981 La. Acts 774. The above excerpts clearly indicate that the statutes permit abortions if they are performed by a physician who follows specified procedures. A blanket criminal prohibition of abortions and the use of abortifacients is inconsistent with these regulations.

The state argues, however, that, notwithstanding the conflict, we are bound by legislative statements independent of the regulatory acts that show an intent not to repeal the earlier legislation. Several years after passing the abortion regulations, the Louisiana legislature enacted an

"expression of intent"[3] and a non-binding resolution[4] indicating a desire to enforce the criminal statutes.

Even if the legislative intent to criminally prohibit abortion was clear at the time the abortion regulations were passed, the question remains whether this subjective desire not to repeal the criminal statute has any effect when a later statute conflicts with that earlier legislation. Allowing such a practice would undermine the policy for having implied repeal: to have a "consistent body of law" which people can use to guide their behavior. 1A N. Singer, **Sutherland Statutory Construction** § 23.09 at 332 (4th ed. 1985) [hereinafter **Sutherland**].

Neither party has cited nor has this court found any cases to support the state's argument that a bald statement of a contrary legislative intent can prevent the earlier of two clearly conflicting statutes from being repealed.

In **Sutherland's** discussion of implied repeal the author stresses the role of legislative intent; legislative intent is to be used to construe the statutes to decide whether a conflict exists. "Where there is an ambiguity in the statute, the legislative intent is the source of the compromise, but where conflict is readily seen by an application of the later enactment in accord with that intent, it is clear that the later enactment is intended to supersede the existing law." Sutherland at 332. *See also Morton v. Mancari,* 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974).

We are persuaded that the criminal abortion statutes cannot be reconciled with the later acts regulating abortions. The statutes regulating abortion and those prohibiting it cannot be read as the statutes were in *Wenk v. Anisman,* 211 La. 641, 30 So.2d 567 (1947) to allow enforcement of both the earlier and later schemes. One statute must prevail and the rule of statutory construction accepted by the Louisiana courts is that effect is to be given to the more recent statute and the prior statute is impliedly repealed.

■ Because the criminal abortion statutes and abortion regulations clearly conflict, the earlier statutes were repealed by implication. The motion to dissolve the injunction restraining enforcement of §§ 14:87 and 14:88 is, therefore, moot.

### III. Abortion Advertising

■ Plaintiffs concede that the 1978, 1980 and 1981 abortion regulations discussed above are not irreconcilable with the criminal prohibitions against abortion advertising. Therefore, mootness does not preclude our consideration of the state's 60(b)(5) motion with regard to § 14:87.4 or the portion of 14:88(1) which covers the advertising of abortifacients. The standard for relief under rule 60(b)(5) is whether there has been a significant modification in decisional law such that continued enforcement of the injunction is inequitable. *United States v. Georgia Power Co.,* 634 F.2d 929, 934 (5th Cir.1981).

This court relied on *Bigelow v. Virginia,* 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), when it enjoined the enforcement of the Louisiana statutes barring advertisement of abortion and abortifacients. In *Bigelow* the Supreme Court expressly recognized a First Amendment right to advertise abortion services.

The Court in *Webster* did not address the First Amendment issue and dismissed as moot a challenge to the one provision of the Missouri law that would have implicated principles of free speech. —— U.S. ——, 109 S.Ct. at 3053–54. Because *Bigelow,* the First Amendment precedent pertaining to abortion advertising, was neither discussed nor in any way affected by *Webster,* the Court's decision in *Webster* cannot justify relief from the injunction against enforcement of La.Rev.Stat.Ann. § 14:87.4 and the relevant portion of § 14:88(1).

There has been no significant change in the decisional law upon which this court relied in issuing the injunction; it is there-

---

**3.** La.Rev.Stat.Ann. § 40:1299.35.0.

**4.** La.H.R.Con.Res. 10, Acts 1989, 2d Ex.Sess., 1989 La.Sess.Law Serv. A–3.

fore not inequitable to continue to enforce the injunction.

MOTION DENIED.