(40 South. 535.)

No. 15,717.

McMANUS v. SCHEELE.

(Jan. 15, 1906.   Rehearing Denied Feb. 26, 1906.)

MUNICIPAL CORPORATIONS — CONTRACTS — VALIDITY—INTEREST OF MEMBER OF COUNCIL.

There were two contracts entered into: The first between the contractor and the city of New Orleans. The second between the contractor and others formed into a partnership to execute the first contract. The last contract was tainted with nullity, in consequence both fell within the grasp of the prohibitory law, and the certificates based thereon, in hands of plaintiff, are null and void, and cannot form the basis of a judgment.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, §§ 657–664, 1065.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Hugh McManus against Michael Scheele. Judgment for defendant, and plaintiff appeals. Affirmed.

McCloskey & Benedict, for appellant. George Joseph Untereiner, for appellee.

BREAUX, C. J. Plaintiff is the owner of certificates issued by the city of New Orleans for paving Galvez street from Julia to Toulouse, with shells. The defendant was the owner of abutting property on Galvez street, and the amount of his bill for paving was $607.96 with 6 per cent. interest from the date the work was accepted, being, he alleges, the proportion due by the defendant on his property fronting on that street. The city paid the remaining third.

John McCoy was the contractor, and the date of the contract was the 21st day of November, 1885.

Defendant attacks the contract on the ground of illegality; he controverts the differ-

ent averments of plaintiff; denies that he has complied with his contract.

The defendant interposed an exception, an answer, and a supplemental answer. He also pleaded estoppel in that defendant urged no objection while the work was being done. To this plea of estoppel, we will refer later. The exception was treated as an answer as it denied that plaintiff was the owner of the certificates on which he had brought suit. In the supplemental answer, plaintiff alleged that "one, William J. Kane, as councilman," at that time, and up to the time of the final completion of said work and acceptance by the city of New Orleans and the delivery of the certificates by the contractor, was interested financially in the execution and acceptance of the contract by the city in violation of a prohibitory law. The defendant urged that a denial of the ownership of the certificates is an answer to the merits, and that the answer subsequently filed was improvidently allowed, and in the second place, on the merits, plaintiff's contention is that a contract, void as against the policy of the law, cannot vitiate a previously fair and lawful contract. The foregoing are substantially the issues.

The facts disclosed by the evidence are that plaintiff was the contractor's security.

About three months after its confection, plaintiff, McCoy, William J. Kane, councilman, and Remy Klock, sheriff, formed a partnership to carry on the work under the contract.

We have seen that Kane was a member of the council, and it follows that as a member it devolved upon him to see to a proper execution of the contract from a disinterested point of view.

This partnership to perform the work was formed before any work at all had been done under the contract, and was continued while the work was being performed.

The council was elected in 1892, and went out of office in 1896.

Plaintiff testified that he knew at the time that the partnership was formed that Kane was a councilman.

McCoy, the contractor's finances, being very limited could not continue in its execution. He transferred his contract to plaintiff, who afterward made necessary advances in money to continue the work. The whole thing fell into the hands of the partnership before mentioned. As the partnership consisted of five until the plaintiff became transferree, the profits were divided, each partner receiving one-fifth, and each, it was agreed, was to be liable for one-fifth of the losses. In this venture, the councilman received about $2,500 for his share of the profits.

While the work was in progress, the partners disagreed and two of them brought suit against the plaintiff, and plaintiff paid them an amount by way of compromise of the suit.

The compromise was offered in evidence, and, among the papers, there was evidence of averment of a compromise of one of the claims against the owner of property abutting Galvez street where paving was done. This also is urged by the defendant as a defense.

The foregoing are the salient facts bearing upon the issues.

From a judgment for the defendant rejecting plaintiff's demand, the appeal is before this court.

The exception of defendant denying plaintiff's ownership of the certificates sued on, presents the first question pressed upon our attention for decision.

The exception was treated as an answer, and was made part of defendant's answer on motion of plaintiff's counsel.

Subsequently, the defendant offered a supplemental answer, to which plaintiff object-

ed, on the ground that it changed the issues. A new ground of defense presented in a supplemental answer to the filing of which defendant objected showed that William J. Kane could not with any degree of propriety become a member of a partnership to execute a contract of the city, while he was a member of the council.

Before this supplemental answer had been filed, plaintiff, as a witness, had testified as to the facts, and fully stated all the particulars of the contract. The case was continued for some time, and, when it was called again, the supplemental answer before mentioned was filed.

There was nothing inconsistent in this answer with the issues before raised. It was proper from the first on the part of the court to permit testimony as it did.

If the contract was unlawful, there is nothing in the court's action about which to complain, for it was the duty of the court to inquire into any unlawfulness in connection with public affairs.

In the second, and only ground of plaintiff on the merits, he urges that there were two contracts, and that although the last may be void, the life and binding effects of the first contract remain. It appears to us that the second contract was closely connected with the first.

If plaintiff and others had been third persons in matter of the execution of this contract, it would be different. They were not third persons. The plaintiff became subrogated to the rights of the contractor. They were all acting in common in executing this contract. As relates to plaintiff's intention, we are quite willing to consider that there was only a technical delictus. It remains, however, that he was a party to the contract almost ab initio, and that he afterward became associated in its execution with a member of the body on whose authority it was awarded. This councilman was one of the members of the council, who was to see

that it was properly executed. Plaintiff knew or he should have known under the law that a councilman could not act both as contractor and contractee, that he could not directly or indirectly become a beneficiary under the contract.

By this agreement, he participated in enabling the officer to derive profit from a prohibited source. Acts 1882, p. 14, No. 20.

In their petition against the plaintiff in another suit, copy of which is in evidence in the pending case, two of the partners, to wit, Monaghan and Kane, allege that they entered into a partnership with plaintiff, in the pending case, and others, for the purpose of carrying into completion certain contracts of the city of New Orleans.

The contract before us in our case was of the number.

They, we think, in this suit identified the second contract with the first, and made each a councilmanic contract; at any rate as relates to the execution.

By reducing the number of partners, and considering the question as if two or less were interested, some light, we think, is thrown upon the subject. Suppose for the discussion that a partnership is formed composed of one member of the council and the contractor with the city, who is thoroughly well aware of the councilman's interest for the purpose of executing a city contract.

The partnership would have no right on a joint account on certificate issued. Or to go a step further, suppose that the councilman would take the contract alone. No one would have the temerity to contend that he would have a right against the city. Instead of the councilman personally here, the partnership assuming to do the work, realized the profits in which all shared alike.

Persons cannot enforce contracts entered into in derogation of the law's policy. A contract contravening a prohibitory law is void. The object must be possible in the terms of the law. Civ. Code, arts. 11, 12, 1885, 1886.

Years ago a member of the city council was interested in a contract to keep streets in repair. It had been adjudicated to his son-in-law, who was his alter ego.

In a suit the father-in-law's interest came to light. The court held that the councilman could not recover, citing the prohibitory clause in question, which is the same to this day. The court held that the prohibition of this clause had its foundation in good morals. Cummings v. Saux, 30 La. Ann. 207.

True, in the pending case, the adjudication was, so far as we know, entirely legal, and the contractor and his surety, the plaintiff, acted in good faith. To this extent there is no similarity between the two cases.

But a similarity arises the moment the combination was entered into, and the before-mentioned partnership was formed to execute this contract. The direct interest of the councilman falls within the grasp of the charter, and carries with it, as being within the terms of the prohibition, at least, the certificates upon which the suit was brought.

A similar view was taken in another jurisdiction, in which it was held that an interested officer cannot recover where there is a prohibitory statute. Berka v. Woodward (Cal.) 57 Pac. 777, 45 L. R. A. 420, 73 Am. St. Rep. 31.

The contract in the cited case was entered into in the interest of the officer from the first, but we have not found a difference between an interest acquired from the first or an interest subsequently acquired. It is all an interest. The prohibitory article of the charter is broad and includes, as prohibited, a direct or indirect interest, so that in this instance, if the interest is not direct, it is, at least, indirect.

Learned counsel urges that the faith of plaintiff is unquestioned. This does not render it possible to disregard a statute enacted in the interest of public morals and policy.

There was unquestionably an error committed in view of the prohibitory clause.

This error is fatal to the certificate plaintiff holds. The error mentioned is of such a character that it renders the right as claimed by plaintiff in this case void, and this would be the case whether the contract had been entered into by a corporation, a partnership, or a person, if the purpose was in opposition to the law we have cited. We specially refer to corporations because they are referred to by plaintiff's counsel, to illustrate that the act which we cannot approve can be accomplished through their agency, and to show that if persons are prohibited, corporations are not. Corporations are not emancipated from the binding effect of the clause in question. A corporation would endanger its very existence if it were to engage in such joint works with officers of a municipality or in any other venture in face of a positive prohibition in public interest.

Plaintiff pleads estoppel, on the ground that defendant remained silent and acquiescent while the work of paving the street and improving it was going on.

We can only say in answer to this contention that a person cannot acquiesce in or assent to an act, which carries with it the disregard of a prohibitory statute, enacted in interest of public policy. Defendant alleged under oath that he did not know before plaintiff testified of the facts averred. A person is not estopped from denying the validity of a contract to which he was not a party, and the particulars of which he did not know.

We are constrained, under our view of the law, to overrule the plea of estoppel.

Lastly, counsel for defendant cites section 119 of Act. No. 45, p. 80, of 1896, regarding discrimination and the defense it may afford. As this case is disposed of on other grounds, we pass this defense, and leave it undecided.

For reasons assigned, the judgment is affirmed.