**111 So.2d 328**

**BARTLEY, INCORPORATED,**

v.

**TOWN OF WESTLAKE, Louisiana, et al.**

No. 44498.

April 27, 1959.

King, Anderson & Swift, Lake Charles, for plaintiff-appellant.

Moss & Graham, Smith & Wise, Lake Charles, McDonald & Buchler, Metairie, for defendants-appellees.

HAMLIN, Justice.

Plaintiff appeals from a judgment of the trial court dismissing its suit against defendants; refusing to annul and declare illegal and void the bid and contract awarded to Port City Construction Co., Inc. for Project No. 1, Sewage Treatment Plant and Appurtenances, Town of Westlake, Louisiana; denying a permanent injunction to enjoin the Town of Westlake, Louisiana, Charles M. Carroll, Mayor of Westlake, Sewerage District No. 2 of the Town of Westlake, Louisiana, and Port City Construction Co., from executing or consummating the contract, supra; and, refusing to recognize plaintiff as low bidder on Project No. 1, supra, and award the contract for such work to it as the only legally qualified bidder.

On October 13, 1958, the Town of Westlake (hereinafter referred to as "Westlake") adopted the following resolution:

"Resolution

A resolution providing for the acceptance of the low bids received for certain sewer improvements within the Town of West Lake, Louisiana, and Sewerage District No. 2 of said Town, and providing for the execution of a contract between the said Town and the low bidder.

"Be it Resolved by the Mayor and Board of Aldermen of the Town of West Lake, Louisiana:

"Section 1. That in accordance with the recommendation of the engineer, the Mayor of the Town of West Lake, Louisiana, be, and he is hereby empowered, authorized and directed to enter into contract, for and on behalf of the said Town and Sewerage District No. 2 of said Town, with E. H. Reeder Construction Co., Inc., in the sum of $468,382.00, for the construction of complete sanitary sewage collection system, the Town's liability not to exceed the sum of $333,210.70, and the liability of Sewerage District No. 2 not to exceed the sum of $135,171.30, and on behalf of the Town of West Lake with Port City Construction Co., Inc. for the construction of complete sanitary sewage treatment plant, in the amount of $291,367.00, all in accordance with plans and specifications prepared by the Town's engineer, Bernard and Burk, said contracts to be substantially in the form of contracts attached to this resolution and made part hereof.

"Section 2. That the Mayor of the Town of West Lake be, and he is hereby, further empowered, authorized and directed to do and perform all such acts as may be necessary and expedient in the premises to effect the execution of the said contracts with the parties named herein, in accordance with the authority granted herein, and to have the same recorded in accordance with the provisions of law.

"Section 3. That the said award, and the signing of the said contracts shall, in accordance with the contract documents, be subject to the availability of funds from the sale of bonds to finance the construction of said improvements, and further shall be contingent upon the approval of the U. S. Public Health Service, and this resolution shall not become effective until such approval is given.

"This resolution having been submitted to a vote, the vote thereon was as follows:

"Yeas: Pousson, Wincey, LeBoeuf, Champagne, Bickham and Carroll

"Nays: None

"Absent: None

"And the resolution was declared adopted on this, the 13th day of October, 1958.

"/s/ C. M. Carroll
"Mayor

"/s/ Mrs. T. S. Megason
"Clerk"

The above resolution recites that the Mayor, Carroll, voted in its favor. This resolution was thereafter corrected by a resolution passed on October 24, 1958, wherein it was stated that C. M. Carroll, Mayor, had not voted on October 13, 1958 for the awarding of the contract, supra, to Port City Construction Company, Inc., (hereinafter referred to as "Port City").

The contract between Westlake and Port City was signed on December 13, 1958.

Prior to that date, Bartley, Inc., the only other bidder on·the contract for Project No. 1, instituted the present litigation on October 31, 1958. It alleged that the bid of Port City was null and void, because Charles M. Carroll, Mayor of Westlake, was an officer and stockholder of Port City and therefore interested in the instant contract, and the consideration for the contract, for the construction of Project No. 1 was to be paid from the Treasury of Westlake.

The basis of plaintiff's charge is LSA–R.S. 33:321–481 (commonly known as the

1. These sections provide for the government of municipalities—such as West-

"Lawrason Act"), which provide for "Local Government," "Mayor and Board of Aldermen."[1]  In LSA–R.S. 33:381, municipal officers are listed as a mayor, aldermen, a marshal, a tax collector, a clerk, and a street commissioner. LSA–R.S. 33:-385 recites:

" * * * No member of the board of aldermen, or any other officer of the corporation, shall be directly or indirectly interested in any work, business or contract the consideration of which is to be paid from the treasury of the municipality, nor be surety for any person having a contract, work, or business with the municipality, for the performance of which security may be required, nor be surety for any officer or employee."

The gist of the above charge is in effect that under LSA–R.S. 33:385 Westlake could not accept the bid of Port City because·the Mayor of Westlake was a stockholder and officer of said corporation.

In rejecting plaintiff's demands, the trial court was of the opinion that the instant contract was governed by the Public Works Act, Act 73 of 1926, LSA–R.S. 38:2211 through LSA–R.S. 38:2217, inclusive. In written reasons denying plaintiff's application for rehearing, it stated:

lake—not governed by special legislative charters.

"The Lawrason Act was adopted in 1898, as Act 136 of 1898, and is carried in the [LSA—] Louisiana Revised Statutes as R.S. 33:321 through 33:-426, inclusive. The Public Works Act was passed in 1926, as Act 73 of 1926, and amended on many occasions, and is carried in the Louisiana Revised Statutes as [LSA—] R.S. 38:2211 through R.S. 38:2217, inclusive.

"Both acts were passed for the benefit of the public, and for their protection, so that funds intrusted to public officials would be properly spent.

"At the time the Lawrason Act was passed, very few members of the Board of Aldermen and Mayors operating under the Act were owners of shares of stock in corporations. Today, the reverse is true. Also many business and professional men serve on town councils, not because of the pay, for generally it is very small, but for civic reasons.

"By applying the strict rule invoked by attorney for plaintiff, many capable men would not serve on the town, village, or city councils, and the administration of the municipal affairs would suffer.

"The evidence discloses that Mayor Carroll has a small stock interest in Port City Construction Company, Inc., and serves as Secretary.

"If we applied the strict rule invoked by plaintiff any of the Board of Aldermen or Mayor of Westlake or any other municipality could not own a small interest in any of the public utilities nor could the utilities contract to furnish the town electric current or gas if any member of the Town Council owned any stock in the corporation.

"The Court is of the opinion that the Public Works Contract, [LSA—] R.S. 38:2211, has ample safeguards to protect the public in seeing that their funds are properly spent."

Appellant properly states that the principal questions presented for our determination are:

"(1) Can the Town of Westlake, acting through its Mayor and Board of Aldermen, enter into a valid contract with a corporation for the construction of public works when its Mayor is interested in such contract by reason of being an officer and shareholder of the private corporation, regardless of whether the Mayor votes in favor of the award?

"(2) Is such a contract valid where the Mayor votes in favor thereof, and if so whether Mayor Carroll so voted in this particular instance?

"(3) If the contract and the bid submitted by the private corporation

are illegal, is Bartley, Incorporated, entitled to an award of a contract for such public works by reason of being the only responsible bidder that bid according to the plans and specifications at such letting?"

█ The preponderance of the evidence reflects that Mayor Charles M. Carroll did not vote at the meeting of the Town of Westlake on October 13, 1958, and it is admitted by all litigants that he is a minority stockholder of Port City and serves as its secretary.[2] Therefore, only questions of law are posed for our consideration.

The Public Works Act reads:

"All public work to be done, exceeding the sum of two thousand five hundred dollars, including both labor and materials, by any public corporation or political subdivision of the state and all purchases of materials or supplies exceeding the sum of one thousand dollars to be paid out of public funds shall be advertised and let by contract to the lowest responsible bidder, who has bid according to the contract, plans and specifications as advertised; and no such public work shall be done and no such purchase shall be made except as provided in this Part. * * *" LSA-R.S. 38:2211.

"The governing authority desiring to let a contract for the purchase of materials or supplies, or for the construction of public works, shall, in its resolution providing for the contract or purchase and for the advertisement for bids, designate the time and place that the bids will be opened and the contract let; and shall at the place and time specified open the bids and let the contract. The governing authority may reject any and all bids." LSA-R.S. 38:2212.

"Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void." LSA-R.S. 38:2215.

"Any member of any governing authority violating the provisions of this Part shall be fined not less than fifty dollars nor more than five hundred dollars, or imprisoned for not more than thirty days, or both." LSA-R.S. 38:2217.

The purpose of the above statute was set forth in Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627, 631, as follows:

2. Mr. Ralph E. Managan, President of Port City, testified that Mayor Carroll owned ten and a half shares of the 413 shares of Port City and was secretary of the corporation.

"This statute in so far as it requires advertising and the obtaining of competitive bids is a prohibitory law founded on public policy. It was enacted in the interest of the taxpaying citizens and has for its purpose the protecting of them against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices. It was not passed for the benefit of the officials and the entities which they represent.

"A contract made in violation of that statutory requirement is wholly illegal. * * *"

Defendants contend that the "Public Policy" of the State is controlled by LSA–R.S. 14:140 [3] and LSA–R.S. 38:2211–2217. In its brief Westlake argues:

"We have referred to [LSA–] R.S. 28:2211–2217 (the public works contract law) under which the bids were received in the case at bar, and we believe we have shown that the provisions thereof are mandatory upon the Town and the Sewerage Board in this case. If it should be considered that the provisions of [LSA–] R.S. 33:385 are contrary thereto and are applicable to the case at bar as contended for by plaintiff, we respectfully submit that it must be concluded that the provisions of both statutes cannot possibly prevail. [LSA–] R.S. 33:385 does not have to be nullified, as the same would prevail and have effect in cases not covered by the statute requiring the submission of sealed bids; however, in a case requiring the submission of sealed bids and the awarding of contract to the lowest responsible bidder, it must be concluded that the provisions of R.S. 33:385 were repealed by [LSA–] R.S. 38:2211–2217." [4]

The fact that the Lawrason Act and the Public Works Act, supra, are both part of the Revised Statutes of 1950 certainly manifests the Legislature's intention that both laws be given effect, if possible.

"It is to be remembered that the Revised Statutes constitute a single act of the Legislature, adopted as a whole; different sections should be regarded not as separate acts, but as simultaneous expressions of the legislative will, and all provisions should be construed together and reconciled whenever pos-

3. LSA–R.S. 14:140, a criminal statute, recites in part that public fraud is committed "(2) When any member of any public board, body, or commission charged with the custody, control or expenditure of any public funds votes for or uses his influence to. secure any expenditure of such public funds to himself, or to any partnership of which he is a member or to any corporation of which he is an officer, director, or stockholder." The present matter contains no allegations of fraud, and the question of fraud is not posed for our consideration.

4. The argument of Port City is substantially the same.

sible. * * *" State ex rel. Fudickar v. Heard, 223 La. 127, 65 So.2d 112, 114. See, also, State ex rel. Le Blanc v. Democratic State Central Committee, 229 La. 556, 86 So.2d 192; State v. Viator, 229 La. 882, 87 So.2d 115.

"It is a recognized rule of statutory construction that the act as a whole ought to be interpreted so that no clause, sentence, or word shall be superfluous, or meaningless, if that result can be avoided. * * *" Hibernia Nat. Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15. See, also, Dore v. Tugwell, 228 La. 807, 84 So.2d 199.

LSA–R.S. 33:321 et seq. (the Lawrason Act) is a special act and LSA–R.S. 38:-2211–2217 (the Public Works Act) is a general law, with related subject matter. In State ex rel. Womack v. Jones, 201 La. 637, 10 So.2d 213, 217, we held:

" * * * The function of the courts of justice is to interpret the laws so as to give them the meaning which the lawmaker obviously intended them to have, and not to construe them so rigidly as to give them absurd or ridiculous meanings."

As a guide we have the settled jurisprudence that "a general statute does not have the effect of repealing a special law upon the same subject matter unless the intent to repeal is so plain and evident that

it cannot be doubted." State ex rel. Warren Realty Co. v. City of New Orleans, 226 La. 297, 76 So.2d 308, 310.

In Wenk v. Anisman, 211 La. 641, 30 So. 2d 567, 571, where we held that Act 209 of 1932, which permitted the purchase of a minor's property by any co-owner, did not have the effect of repealing the articles of the Revised Civil Code prohibiting a tutor from purchasing his ward's property, we said:

"Repeals by implication, according to our jurisprudence, are not favored; and the courts will reconcile seemingly conflicting statutes if such can be done by a fair and reasonable interpretation thereof. Bennett-Brewer Hardware Company v. Wakeman, 160 La. 407, 107 So. 286. Another well established rule to be considered here, in as much as the 1932 Act is a general law (regulating private sale of the property of a minor or interdict) and the codal provisions in question are special in nature (governing capacity of persons to contract), is that a special law is not repealed or amended by a general law unless the two can not possibly stand together, or unless the intention to repeal or amend is otherwise manifest. Keel v. Sutherlin, 130 La. 182, 57 So. 794."

Appellees are in error in their argument that the Lawrason Act, supra, was repealed by the Public Works Act, supra.

These acts can stand together and are not repugnant to each other. The Lawrason Act sets forth the capacities of bidders on certain enumerated contracts and prohibits municipal officers from bidding on contracts to be paid for out of the treasury of the municipality. Its provisions may produce harsh results at times; but, such matters are for the legislature, not the courts, to correct. State v. Winfield, 222 La. 157, 62 So.2d 258; Jackson v. Coxe, 208 La. 715, 23 So.2d 312; State ex rel. Cruse v. La Salle Parish School Board, La.App., 35 So. 2d 608. The Public Works Act sets forth how bids must be offered and accepted for public works by public corporations and political subdivisions. Its provisions have no effect on the capacity of bidders on such projects. We conclude that there is no conflict between the two acts.

■ Appellees have urged that the entire price of the contract herein involved will not be paid from the Treasury of Westlake. Mr. Carroll testified that the Town is to receive a $75,000 grant from the Federal Government and funds from the issuance of bonds; he further testified:

"Q. But all of that money is to be received by the Town of Westlake when the bonds are sold? A. That's right.

"Q. It will be deposited in a bank in a special account? A. That's right.

"Q. In the name of the Town of Westlake? A. Yes, sir.

"Q. Who is going to write the checks on that? A. Well, I imagine the Town of Westlake. I think it is paid by the Mayor and Board of Aldermen.

"Q. And the Treasurer of the Town of Westlake? A. Yes, sir."

There is no merit to the above contention made by appellees, because the evidence shows that the actual payment will eventually be made from the treasury of the municipality.

We conclude that the first question propounded by appellant must be answered negatively. Westlake could not legally enter into the instant contract; the bid of Port City and the contract between Westlake and Port City signed on December 13, 1958 are, therefore, invalid. Cf. McManus v. Scheele, 116 La. 72, 40 So. 535; Hankins v. Police Jury, Natchitoches Parish, 152 La. 1000, 95 So. 102.

As to the second question, we have concluded, supra, that the contract is not valid, and we are convinced from the evidence in the record that the Mayor did not vote at the meeting held on October 13, 1958.

■ The third question is also to be answered negatively. The advertisement for bids filed in evidence contains the following provision:

"The right is reserved to reject any and all bids and to waive informalities."

LSA–R.S. 38:2212 empowers the governing authority of a public corporation to reject any and all bids. Had Westlake not accepted the illegal bid of Port City, we do not know whether it would have accepted the bid of Bartley, Incorporated. This is a matter within the discretion of Westlake. Hankins v. Police Jury, Natchitoches Parish, 152 La. 1000, 95 So. 102.

For the reasons assigned, the judgment of the lower court is reversed, annulled and set aside. It is now ordered, adjudged and decreed—

That the bid submitted by Port City Construction Co., Inc. for the construction of Project No. 1, Sewage Treatment Plant and Appurtenances, for the Town of Westlake, Louisiana, is null and void;

That the resolutions adopted by the Mayor and Board of Aldermen of the Town of Westlake, Louisiana, at its meetings on October 13 and 24, 1958, are null and void, insofar as they purport to accept the said bid and award to Port City Construction Co., Inc. the contract for the construction of Project No. 1, Sewage Treatment Plant and Appurtenances, for the Town of Westlake, Louisiana, and authorize and direct the Mayor of the Town of Westlake, Louisiana, to sign a written contract with Port City Construction Co., Inc. therefor, and

insofar as they purport to ratify and confirm the action of said Mayor and Board of Aldermen of the Town of Westlake, Louisiana, with respect to the award and execution of a contract with Port City Construction Co., Inc. for the construction of Project No. 1, Sewage Treatment Plant and Appurtenances, for the Town of Westlake, Louisiana;

That the written contract signed by the Town of Westlake, Louisiana, and Port City Construction Co., Inc. on December 13, 1958, for the construction of Project No. 1, Sewage Treatment Plant and Appurtenances, for the Town of Westlake, Louisiana, is illegal, null and void;

That a permanent injunction issue herein, enjoining the Town of Westlake, Louisiana, Charles M. Carroll, as Mayor of the Town of Westlake, Louisiana, Sewerage District No. 2 of the Town of Westlake, Louisiana, and Port City Construction Co., Inc., their officers, agents and all other persons, firms or corporations acting or claiming to act in their behalf, from taking any steps towards consummation of the written contract signed by the Town of Westlake, Louisiana, and Port City Construction Co., Inc. on December 13, 1958, for the construction of Project No. 1, Sewage Treatment Plant and Appurtenances, for the Town of Westlake, Louisiana;

That the demands of Bartley, Incorporated, to be recognized as the low bidder for

the construction of Project No. 1, Sewage Treatment Plant and Appurtenances, for the Town of Westlake, Louisiana, and to be awarded the contract for such work, are rejected and dismissed.

All costs are to be paid by appellees.

McCALEB, J., concurs in the result.

SIMON, J., concurs in the result decreed.

111 So.2d 336