PER CURIAM.
As authorized by Section 25 of Article VII of the Louisiana Constitution of 1921, LSA and by LSA-R.S. 13:4449, and in ■compliance with Rule XII, Section 4, of the Supreme Court, 8 LSA-R.S., this court ■does herewith apply to the Honorable, the Supreme Court of Louisiana, for instructions on a question of law arising in the .above captioned appeal.

Facts.

This is an appeal from a permanent injunction issued by the District Court enjoining the Calcasieu Parish Police Jury from executing a lease of certain real property located on the east side of Chennault Field to Louisiana Flyers, Inc.
The principal question upon which we desire instruction is whether the Police Jury must require competitive bidding in order to lease a tract of land, including improvements, for use as a landing field.
For a considerable period of time, the Calcasieu Police Jury has operated an airport adjacent to Chennault Air Force Base. In connection therewith, the Police Jury has on several occasions granted leases, after private negotiation, to persons that have conducted various activities connected with flying.
In 1962, the Police Jury, pursuant to LSA-R.S. 2:601 et seq., created an Airport Authority for the purpose of managing the new Lake Charles Municipal Airport, which was constructed to induce the United States to declare Chennault a permanent installation. Since that time, Chennault has been declared unnecessary, and the Calcasieu Parish Police Jury has two airports.
Although the area subject to the jurisdiction of the Airport Authority includes the old airport, it has never exercised any powers over the old airport, and the police jury has continued over the years to lease facilities at it without advertising and competitive bids.
Louisiana Flyers, Inc., primarily engaged in the business of agricultural aircraft service, has been operating from the “old airport”, under a year-to-year lease arrangement from the Calcasieu Police Jury, for the past seventeen and one-half years. In August of 1964, Louisiana Flyers, Inc., desiring a more permanent arrangement, began negotiations for a new lease. The Police Jury offered to lease to Louisiana Flyers, Inc.,, their desired facilities at the “old airport”, consisting of 50 acres of land and improvements, including hangars, thereon, for the initial sum of $20,000 and $50 per acre per year for a primary term of ten years and two five-year options.
*156 At this juncture, plaintiff, Thomas W. Hall, a resident landowner and taxpayer of Calcasieu Parish, brought suit against J. W. Rosteet, acting in the capacity of President of the Calcasieu Police Jury, seeking to enjoin him from executing the lease to Louisiana Flyers, Inc., on the grounds that, inter alia, (1) the Police Jury had divested itself of authority to grant such a lease by creating the Airport Authority, and (2) that the Police Jury did not comply with LSA-R.S. 41:1211-41:1217, requiring advertisement and competitive bidding, in granting the proposed lease. The District Court agreed with this contention and granted a permanent injunction against executing the lease. The defendant appeals.

Principal question.

The principal question of law upon which this court desires instructions concerns the potential application in whole or in part of either or both of two statutes concerning the leasing of public lands, which contain provisions conflicting to some extent.
On the one hand, the plaintiff contends and the trial court held that applicable are the provisions of LSA-R.S. 41:1211 et seq., regulating generally the leasing of public lands, insofar as these provisions require competitive bidding. On the other hand, the defendant police jury contends that the Uniform Airports Law, LSA-R.S. 2:131 et seq., exclusively governs the leasing of lands for airport or landing field purposes, which statute authorizes such leasing but is silent about any competitive bidding requirements; and that LSA-R.S. 41:1211 et seq. does not apply to leases such as the present.
The general statute provides for leasing of public lands only after written application, advertisement, and competitive bidding, providing a detailed procedure for the execution of such leases. LSA-R.S. 41:1211 — 1215. The provisions are applicable to the general authority granted to any political subdivision through its governing body to “lease for trapping, grazing, hunting, agricultural or any other legitimate purposes whatsoever, other than for oil,, gas or other mineral purposes and development, any lands of which the lessor [i. e.,. the public body] has title, custody, or possession. * * * ”
Possibly pertinent restrictions on the-general leasing power are that no lease-shall cover a larger area than six hundred' and forty acres, LSA-R.S. 41:1216, and' that no lease shall be for a term of more-than ten years with a rental of less than-twenty-five cents per acre, “provided, however, that any person who leases such land and who within the ten-year term of the-lease adds or contracts for permanent improvements to the land in the amount of not less than fifteen thousand dollars may, upon written notification to the lessor and upon a proper showing that such improvements have in fact been made or contracted for, lease such land for an additional period of not more than ten years * * * ”, LSA-R.S. 41:1217, subd A. (It is specially provided that these ten-year term and minimum rental provisions “shall not apply to-any school district”, LSA-R.S. 41:1217, subd. C.) It is further provided by LSA-R.S. 41:1220 that: “It shall be unlawful for anyone to knowingly trespass upon the leased lands, and thereon to trap, hunt, graze stock or engage in other agricultural pursuits * * *.”
On the other hand, the Uniform Airports Law simply provides that local authorities which establish airports or landing fields or which set apart real property for such purposes may, LSA-R.S. 2:135(3) : “(3) Lease for a term not exceeding twenty-five years such airports or landing fields to private parties for operation, or lease or assign for a term not exceeding twenty-five years to private parties for operation space, area, improvements, and equipment on such airports or landing fields, provided in each case that in so doing the public is not deprived of its rightful, equal, and uniform use thereof.”
The police jury’s view is that the leasing authority contained ' in the just-quoted *157 LSA-R.S. 2:135(3) of the Uniform Airports Law (which is silent about any competitive bidding requirements) authorizes it to negotiate leases for airport purposes without compliance with the general purpose leasing statute, LSA-R.S. 41:1211 et seq. It argues that such unrestricted leasing power is needful authority fairly implied from the legislative grant of power with regard to the creation of airports, Stone v. Police Jury of Parish of Calcasieu, 226 La. 943, 77 So.2d 544, and that the acreage and term restrictions of the general leasing statute are clearly inconsistent with the airport leasing statute, indicating that the latter alone is the appropriative statutory regulation of the present lease. The further contention is made that the general leasing statute under its terms applies only to leases for purposes similar to trapping, grazing, hunting, and agricultural purposes (and not to leases for airport or commercial purposes) because the statutory authority to “lease for trapping, hunting, agricultural or other legitimate purposes whatsoever” should be interpreted according to the ejusdem generis rule[1], which view the police jury believes is implicitly if not explicitly supported by a statement and the holding in Gorham v. Mathieson Alkali Works, 210 La. 462, 27 So.2d 299. The police jury also points out that the trespass, acreage-restriction, and acreage-rental provisions of LSA-R.S. 41:1211 et seq. are consistent with a legislative intention to regulate leasing of unimproved lands for agricultural, trapping, and similar purposes, but not with an intention to regulate leasing of building and improvements or of lands for airport and commercial and similar purposes.
The plaintiff-appellee argues that, on the other hand, the general leasing provision by its specific terms regulates not only leases granted for agricultural, etc., purposes, but also for “any other legitimate purposes whatsoever, other than for oil, gas or other mineral purposes and development”. It is contended that the ejusdem generis rule is not a hard and fast rule and is only helpful where the true legislative intent cannot be discovered from the language of the-statute itself (S. A. Harris Transfer and Storage, Inc. v. Louisiana Public Service Commission, 240 La. 1059, 127 So.2d 148, McHugh v. Placid Oil Co., 206 La. 511, 19 So.2d 221), whereas in the present case the legislature has clearly and unambiguously intended for the competitive leasing procedure to be followed in leases of public lands for “any other legitimate purposes whatsoever, other than for oil, gas or other mineral purposes.” Further, it is suggested that the specification that only oil and gas-leases are to be excepted from the provisions of the general leasing statute indicates that no other exceptions are intended,, under the principle of “expressio unius est exclusio alterius” (the expression of one-thing is the exclusion of others), cf. State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656. Finally, it is contended that the airport leasing and the general leasing-provisions of the Revised Statutes should be read as simultaneous expressions of the-legislative will, so that the provisions of both should be given effect where not in conflict, Bartley, Incorporated v. Town of Westlake, 237 La. 413, 111 So.2d 328. Thus,, it is suggested, although special provisions-of the special airport statute as to term, might be given effect insofar as in conflict with the general leasing’s statute provision on the subject, 82 C.J.S. “Statutes” § 347 b,. p. 720, nevertheless, there is no conflict between the special and the general statute as to the requirement of competitive bidding in the leasing procedure, so that such lat *158 ter’s statutes provisions should apply to accomplish the legislative purpose intended, which Your Honors stated was “to give all persons a chance to bid on leases of the public lands, to prevent boards and other authorities from favoring one person over others, and to produce to the various agencies of the State named therein larger revenues by requiring competitive bidding for the leases.” Ellis v. Acadia Parish School Board, 211 La. 29, 29 So.2d 461, 465. It is finally pointed out that competitive bidding for leases is not necessarily inconsistent with proper powers needful for operation of airports, cf., National Car Rental System v. City of New Orleans, La.App. 4 Cir., 160 So.2d 601.

Subsidiary question.

When the Calcasieu Parish Police Jury in 1962 created an airport district including the territories in which both the old and the new airports were located, it vested control of this district in the Airport Authority by resolution duly adopted. It is contended that the creation of this Airport Authority under the provisions of LSA-R.S. 2:601 et seq., the Airport Authorities Law, had the effect of divesting the police jury of any authority to grant any lease of public lands within that district for airport or landing field purposes, since such would be in conflict with the authority delegated to the Airport Authority. It is further contended that the police jury, having once vested the control of the airport district (including the old airport) in the Airport Authority, cannot subsequently divest it of authority affecting a portion of the district (such as the old airport).

Conclusion.

The judges of this court are closely divided as to which of the potentially conflicting statutory provisions and jurisprudential expressions of the Supreme Court govern the proper decision of the question before us. The question of whether competitive bidding is required for leases of all public lands except where otherwise specifically indicated, or whether competitive bidding is required only in limited instances, is of widespread importance insofar as the local governments of Louisiana. This threshold question must be decided by us before other issues in this case can be considered; but it is possible that the decision of the other issues might put this appeal in such a posture that review by Your Honors of this court’s expression on the question will be so long postponed as to cause prolonged uncertainty and confusion as to this question of great public interest throughout the state, affecting the validity of public land leases and local governmental powers. For all of these reasons, and in order to expedite the decision of this important question with final authority by the tribunal which ultimately must choose which of conflicting authorities govern, we are exercising our constitutional authority to certify the questions of law here raised to the Supreme Court.
The questions upon which we desire instruction are these:
I.
Are the competitive bidding provisions of LSA-R.S. 41:1211 et seq. applicable only to leases of lands for agricultural, grazing, hunting, trapping, and similar purposes, or do they apply to leases for any purpose whatsoever, except where the competitive bidding provision is specifically made not applicable by statute?
II.
Does the authority of local authorities to lease land for airport or landing field purposes under LSA-R.S. 2:135(3) require compliance with the competitive bidding procedure of LSA-R.S. 41:1211 et seq., or is the statutory authority contained in LSA-R.S. 2:135(3) independent of and not regulated by any non-conflicting provisions of the other statutory provisions ?
III.
Did the Police Jury divest itself of authority to grant leases for airport or land *159 ing field purposes within the airport district, by vesting control of such district in the Airport Authority ?
Respectfully submitted:
ALBERT TATE, Jr.
J. CLEVELAND FRUGÉ
PRESTON L. SAVOY
JOHN T. HOOD, Jr.
WILLIAM A. CULPEPPER Judges.

. See Black’s Law Dictionary (4th ed., 1951), p. 60S: “EJUSDEM GENERIS. Of the same kind, class, or nature.
“In the construction of laws, wills, and other instruments, the ‘ejusdem generis rule’ is, that where general words follow an enumeration of persons or things, hy words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned. * # * *»